```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Jeffrey Phaneuf

    v.                                        Civil No. 13-cv-139-LM
                                             Opinion No. 2014 DNH 145

Carolyn W. Colvin,
Acting Commissioner
Social Security Administration


## O R D E R


Pursuant to 42 U.S.C. § 405(g), Jeffrey Phaneuf moves to reverse and remand the decision of the Acting Commissioner of the Social Security Administration denying his application for disability insurance benefits and supplemental security income.[1] Phaneuf contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinion evidence, erred in his credibility assessment, and erred in failing to find him disabled at Step Three of the sequential analysis. The Acting Commissioner moves to affirm the decision.


## Standard of Review

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[1] Although the applicant's counsel spelled his name "Jeffery", the administrative records shows that his name should be "Jeffrey".

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a).[2]  The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled.  § 404.1520.  The claimant bears the burden, through the first four steps, of proving that his impairments preclude him from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether other work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

In reviewing the decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey, 276 F.3d at 9.  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

---

[2]The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and for supplemental security income at Part 416.  Because the regulations are substantially the same, the court will cite only to the disability insurance benefits regulations, Part 404.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

Factual Background

Phaneuf's records show that he has a long history of mental-health issues. Thomas E. McCandless first treated Phaneuf in 1980 and provided an evaluation in 1990 in which he diagnosed Phaneuf with an anti-social personality disorder.

More recently, Phaneuf received counseling with Stephen Boy, Ph.D., beginning in October of 2009. Phaneuf told Dr. Boy that he was estranged from his wife and that he had had a lifelong history of criminal behavior. Phaneuf said that he "pushes it to the point [that] he [might] be incarcerated." Dr. Boy diagnosed substance abuse and antisocial behavior and noted that Phaneuf was at risk for impulsive behavior because of his addiction. In December and January, Phaneuf continued to report substance-abuse problems and issues with his estranged wife.

Phaneuf saw his primary-care physician, Michael Guidi, D.O., in February of 2010. Dr. Guidi noted Phaneuf's "significant emotional upset" because of the failure of his marriage and Phaneuf's reports of obsessive-compulsive behavior, depression, anxiety, and insomnia. Dr. Guidi prescribed Trazodone for insomnia.

From March through May of 2010, Phaneuf continued counseling with Dr. Boy who noted Phaneuf's antisocial behavior and warned Phaneuf that he would end up in jail as a result of his anger at his estranged wife. On June 21, 2010, Phaneuf had an appointment with Kevin DiCesare, M.D., a psychiatrist at the Center for Life Management, to get a second opinion on his

treatment options.  Phaneuf reported his history of mental health issues and his problems with his estranged wife.  On examination, Dr. DiCesare found that Phaneuf had good eye contact, normal speech and movement, no significant deficits in memory or concentration, and logical and goal-directed thought processes.  Phaneuf had fair insight and grossly intact judgment.  Dr. DiCesare diagnosed a mood disorder, not otherwise specified, and antisocial personality traits.  He assigned a GAF score of 60.[3]  Dr. DiCesare continued Phaneuf's prescriptions for Citalopram, for depressive symptoms, and Trazodone, for sleep, and added Depakote, for manic episodes, and Ativan, for anxiety.  He also recommended that Phaneuf begin treatment with a psychotherapist.

In July of 2010, Phaneuf began therapy at Center for Life Management with Alissa Dillon, a licensed mental-health counselor.  Dillon found that Phaneuf was alert and oriented, had a depressed mood and "congruent affect," and was difficult to engage.  Phaneuf reported sleep and anger problems related to his separation from his wife.  Dillon recommended weekly sessions to develop coping skills and identify triggers for

---

[3] GAF is an abbreviation for global assessment of functioning and provides a means for mental health professionals "to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." Gonzalez-Rodriguez v. Barnhart, 111 F. App'x 23, 25 (1st Cir. 2004); see also American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).  A GAF score of 51 to 60 represents moderate symptoms.  Jones v. Astrue, No. 1:10-CV-179-JAW, 2011 WL 1253891, at *3 n.4 (D. Me. Mar. 30, 2011).

anger issues.  Dr. DiCesare provided a treatment plan for weekly sessions with Dillon, and recorded Phaneuf's diagnosis of mood disorder, not otherwise specified, and a GAF score of 60.

During sessions with Dillon in August of 2010, Phaneuf had increased symptoms of depression and reported problems with sleep and stress about his work where coworkers had been laid off.  Dillon warned Phaneuf that he was in danger of losing his treatment because he had missed three appointments with Dr. DiCesare.

On December 6, 2010, Phaneuf was seen by Carrie Winn, a licensed mental health counselor at Center for Life Management, for a court-requested anger management evaluation.  Winn found that Phaneuf was cooperative, had good eye contact, and maintained good attention and concentration.  She found that Phaneuf's long-term memory was impaired but his short-term memory was good.  Testing showed no signs of anxiety or depression but episodic occurrences at the moderately angry level.  Phaneuf requested that his medication be refilled but declined the counseling that was required for medication.  Winn noted that Phaneuf would benefit from mental-health counseling and participation in an anger-management group.

Dr. DiCesare completed a Mental Impairment Questionnaire on December 23, 2010.  Dr. DiCesare noted that although Phaneuf reported a stable mood, he had a history of intermittent explosiveness, and that he could not assess the level of impairment in Phaneuf's daily activities.  Dr. DiCesare found that Phaneuf had no evidence of a thought disorder, had impaired

long-term memory but intact short-term memory, had good attention and concentration, had average intelligence, and had poor insight and judgment.  As to task performance, Dr. DiCesare noted that Phaneuf reported no impairment and he observed none.  He diagnosed mood disorder, not otherwise specified, and antisocial personality traits.

A state agency psychologist, Edward Martin, Ph.D., reviewed Phaneuf's records and completed a Psychiatric Review Technique form on January 25, 2011.  Dr. Martin found that Phaneuf had no restrictions in daily activities, mild difficulty in maintaining social functioning, no extended episodes of decompensation, and no difficulties in maintaining concentration, persistence, or pace.

Phaneuf changed therapists at Center for Life Management and began seeing Gregory Pantazis, a licensed alcohol and drug counselor, in March of 2011.  Phaneuf said he was unhappy with his job at a collection agency but feared that he would not find another job if he left.  Phaneuf also said that he had been having emotional issues since his divorce and that he relieved pain with drug use.  Phaneuf had a depressed mood and "congruent affect," was expressionless, and was difficult to engage in the session.

In April of 2011, Pantazis reported that Phaneuf had a positive mood and affect, was able to process highs and lows, and was able to set goals for the next session.  Phaneuf continued to have issues with drug use and withdrawal.  In June,

Phaneuf identified work and the lack of a romantic relationship as the stressors in his life.

Phaneuf had appointments with Dr. DiCesare in April and June of 2011 for management of medication, Depakote.  On examination, Phaneuf had no abnormal movements, good eye contact, non-pressured speech, logical and goal-directed thought processes, intact cognition, fair insight, and intact judgment.  Phaneuf's mood was depressed.  In July, Phaneuf reported that he had lost his job because of attendance issues and that he had had a relapse of drug use.  The results of the examination were similar to the previous results.

In July and August, Phaneuf reported to Pantazis and Dr. DiCesare that he had been taking Suboxone which he found helpful in maintaining sobriety.  Phaneuf was having financial problems because of unemployment.  In October, Phaneuf told Dr. DiCesare that he had lost his housing and was staying at a friend's apartment.  Dr. DiCesare noted a worsening in Phaneuf's mood and told him that he needed to participate in therapy to maintain the medication services.  Phaneuf requested a new therapist.

Dr. DiCesare completed a Mental Impairment Questionnaire on October 28, 2011.  He assigned a GAF score of 50, noting that the highest score during the year was 60.  Dr. DiCesare explained that Phaneuf had had a limited response to medication, which had caused side effects.  He stated that Phaneuf had marked restriction in activities of daily living, extreme difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence, and

7

pace, and four or more episodes of decompensation, lasting at least two weeks, during the year.  Dr. DiCesare anticipated that Phaneuf's impairments would cause him to miss work four or more days each month and noted Phaneuf's history of being disruptive and combative in the workplace.

On the same day, Dr. DiCesare completed a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" form.  He indicated on the form that Phaneuf was seriously limited, unable to meet competitive standards, or had no useful mental abilities or aptitudes needed to do unskilled work.  As to semi-skilled and particular types of jobs, Dr. DiCesare checked the boxes indicating that Phaneuf had no useful ability to do that kind of work or, at best, was unable to meet competitive standards.  He also anticipated that Phaneuf would be absent from work more than four days per month.

At an appointment with Dr. DiCesare in December of 2011, Phaneuf reported that he had stopped taking Suboxone and had relapsed to abusing drugs.  Phaneuf was still challenged with depression and irritability.  Dr. DiCesare found no abnormal movements, good eye contact, normal speech, the same mood as previously, logical and goal-directed thought processes, no suicidal or homicidal ideation, no delusional or hallucinatory thinking, intact cognition, fair insight, and intact judgment.

Phaneuf applied for disability insurance benefits and supplemental security income in December of 2010.  When his application was denied, he requested a hearing that was held on

December 15, 2011.  Phaneuf testified at the hearing, and a vocational expert also testified.

The ALJ issued a decision on January 19, 2012, finding that Phaneuf was not disabled.  The Appeals Council denied Phaneuf's request for review, making the ALJ's decision the final decision of the Commissioner.

## Discussion

In support of his motion, Phaneuf contends that the ALJ improperly weighed the medical opinions and failed to properly assess his credibility.  Phaneuf also contends that the ALJ erred in failing to find that his mental impairments equaled a listed impairment and that the medical evidence does not support the ALJ's decision.  The Acting Commissioner defends the ALJ's reasoning and moves to affirm the decision.

### A.  Medical Opinions

The ALJ attributes weight to a medical opinion based on a variety of factors including the nature of the relationship between the medical source and the applicant, the extent to which the opinion includes supporting information, the consistency of the opinion with the record as a whole, the specialization of the source, the source's understanding of the administrative process, and the source's familiarity with the applicant's record.  20 C.F.R. § 404.1527(d); see also SSR 96-

2p, 1996 WL 374188 (July 2, 1996).[4] A treating medical source is the applicant's own physician, psychiatrist, psychologist, or other acceptable medical source. 20 C.F.R. § 404.1502. A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d).

Only acceptable medical sources can give medical opinions, can be considered treating sources, and can establish the existence of a medically determinable impairment. §§ 404.1502, 404.1513(a), & 404.15276(a)(2); see also SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006)[5]; Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012). Other care providers "may provide insight into the severity of the impairment and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, at *2; accord Young v. Colvin, No. 13-CV-024-SM, 2014 WL 711012, at *6 (D.N.H. Feb. 25, 2014); Noonan v. Astrue, No. 11-CV-517-JD, 2012 WL 5905000, at *8 (D.N.H. Nov. 26, 2012). "As the Commissioner's own Social Security Ruling explains,

---

[4]SSR 96-2p is titled Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions.

[5]SSR 06-3p is titled Titles II and XVI:II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.

10

'[t]he evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.'" Taylor, 899 F. Supp. 2d at 88 (quoting SSR-06-3p, at *5).

1. Dr. DiCesare

Phaneuf contends that the ALJ erred in evaluating Dr. DiCesare's opinion. Phaneuf agrees with the ALJ that Dr. DiCesare's opinion is not entitled to controlling weight but argues that the ALJ did not adequately explain the weight he gave to the opinion.[6] The Acting Commissioner supports the ALJ's evaluation.

In the decision, the ALJ noted that Dr. DiCesare found that Phaneuf had "marked" limitations in daily living activities and "extreme" limitations in maintaining social functioning and maintaining concentration, persistence, or pace. The ALJ gave little weight to those opinions because they were inconsistent with Dr. DiCesare's treatment notes. To explain, the ALJ cited specific treatment notes, close to the time when Dr. DiCesare provided his opinions, when Dr. DiCesare found that Phaneuf's

---

[6]Because Phaneuf does not argue that Dr. DiCesare's opinion should have been given more weight than the ALJ assigned, Phaneuf's challenge does not appear to seek a different outcome. As such, even if the ALJ's analysis were deficient, which it was not, any error would be harmless. See, e.g., Jackson v. Comm'r of Soc. Sec., No. 12-15036, 2014 WL 1304913, at *17 (E.D. Mich. Mar. 31, 2014).

functioning was normal, that he was alert and oriented, and that he had no deficits in memory or concentration. The ALJ also reviewed Phaneuf's GAF scores and noted that those assessments indicated only moderate impairments or limitations.

The ALJ correctly and appropriately reviewed the medical records and found that Dr. DiCesare's opinions were inconsistent with that evidence. Because of the inconsistencies, the ALJ properly assigned little weight to those opinions.

### 2. Therapist Pantazis

Phaneuf argues that the ALJ improperly relied on a selective few opinions and observations of his therapist, Gregory Pantazis. He faults the ALJ for relying on opinions that were generated during "the artificial and highly supportive context of a therapy appointment." The Acting Commissioner contends that the ALJ correctly found that Pantazis's opinions were consistent with Phaneuf's records.

Pantazis's treatment notes show that Phaneuf's mood varied at their meetings. Even when Phaneuf's mood was depressed, however, Pantazis noted that Phaneuf was alert, oriented, and able to process the paperwork necessary for treatment. More frequently, Pantazis noted that Phaneuf's mood was positive and that he was able to process highs and lows, set goals for treatment, and seemed ready for change.

Therefore, the medical records support the ALJ's analysis of Pantazis's opinions and observations. Although Pantazis is not an acceptable medical source, his opinions and observations

made during many treatment sessions are properly considered to determine the nature and severity of Phaneuf's impairments.

B. Credibility

The applicant's credibility with regard to reports of symptoms such as pain is assessed based on several factors: his daily activities, functional restrictions, non-medical treatment, medications and side-effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the pain he reports. See 20 C.F.R. § 404.1529(c)(3); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); see also SSR 96-7p.[7] "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). While the ALJ is expected to consider all of the relevant factors, he need not explicitly analyze each factor in the decision. Wenzel v. Astrue, No. 11-CV-269-PB, 2012 WL 2679456, at *7 (D.N.H. July 6, 2012).

Phaneuf criticizes the ALJ's credibility assessment for merely inserting boilerplate language, failing to consider Phaneuf's work history, and erroneously evaluating his daily

---

[7] Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996).

13

activities.  The ALJ found that Phaneuf's statements about the severity and effects of his symptoms were not credible to the extent they were inconsistent with his ability to do a full range of low-stress work with certain limitations as to pace and interaction with the public, coworkers, and supervisors.

The ALJ did not rely on boilerplate but instead explained that the record evidence and Phaneuf's conduct and testimony at the hearing did not support Phaneuf's view of his impairments. The ALJ noted that he observed Phaneuf during the hearing and that Phaneuf was engaged, able to participate and testify without distraction, that his testimony was clear and well reasoned, and that Phaneuf's conduct showed that he was able to interact well and understand and follow instructions.  Phaneuf stated that he was unable to work because he could not control his moods which made him disruptive and combative in the work place, but the ALJ noted that the reports from Phaneuf's employers show that he was terminated because he did not work the required amount of time, he gave false information to customers, he did not follow company policy, and did not cancel payments when requested.

The ALJ found that Phaneuf had only mild restrictions in daily activities, despite Phaneuf's description of more severe impairments.  The ALJ noted that Phaneuf regularly went shopping, performed chores around the house, took care of his two children to some extent, and maintained his treatment schedules, which required travel and contact with the public. Although Phaneuf disputes the extent of his activities, arguing

14

that his mother provided most of his meals, housekeeping, and child care, the ALJ's determination is supported by substantial evidence.

C.  Step Three

At Step Three of the sequential analysis, the ALJ must determine whether the applicant has an impairment or a combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P.  See Pfeffer v. Colvin, Civ. Action No. 12-30181-GAO, 2014 WL 1051197, at *3 (D. Mass. Mar. 18, 2014).  Psychological and behavioral disorders are addressed in section 12 of 20 C.F.R. Part 404, Subpart P, Appendix 1, which provides nine diagnostic categories.  To meet a listed impairment, the applicant must demonstrate that he satisfies the criteria for that listing.  20 C.F.R. § 404.1525.  When an applicant has impairments that are not listed, he may still be found disabled at Step Three if he can show that his impairments are at least equal in severity and duration to an analogous listing.  20 C.F.R. § 404.1526.

In this case, the ALJ found that Phaneuf's mental impairments caused mild restrictions in his activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  The ALJ considered the diagnostic categories for affective disorders (§ 12.04), anxiety-related disorders (§ 12.06), and substance-abuse disorders (§ 12.09).  To meet the required level of severity for

those listings, an applicant must satisfy the criteria for Paragraph A, and <u>either</u> the criteria of Paragraph B or the criteria of Paragraph C.  The ALJ concluded that Phaneuf did not meet a listed impairment because he did not satisfy either Paragraph B or Paragraph C.

Based on an apparent misunderstanding of the listing requirements, Phaneuf argues that the ALJ erred in not finding him disabled because he found marked limitations in maintaining social functioning.[8]  Phaneuf appears to argue that contrary to the ALJ's finding, he satisfied the listing criteria in Paragraph B.  Simply put, one finding of marked limitations is not enough to meet the requirements of the pertinent listings.

Paragraph B in sections 12.04, 12.06, and 12.09 (which incorporates the criteria of other listings) requires a condition described in Paragraph A that results in at least two of four listed problems, which are marked restrictions or difficulties or repeated episodes of decompensation.  Although the ALJ found marked limitations in maintaining social functioning, he found no other marked limitation or difficulty and no episode of decompensation.  As a result, Phaneuf did not

---

[8]Although Phaneuf states that the ALJ erred in failing to assess whether his impairments "equaled" a listed impairment, he makes no developed argument aimed at equivalence.  The ALJ considered three listings, and Phaneuf does not identify any other listing that would be relevant to his impairments.  Therefore, Phaneuf did not sufficiently present an argument based on equivalence to permit review.  See Higgins v. New Balance Athletic Shoes, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

16

meet the requirement of two Paragraph B criteria.[9]  See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")

Phaneuf also argues that the ALJ failed to consider the combined effect of all of his impairments.  He is mistaken.  The ALJ stated that he considered Phaneuf's impairments singly and in combination, and the ALJ's analysis of Phaneuf's impairments supports that conclusion.

D.   Residual Functional Capacity

A residual functional capacity assessment determines the most a person can do in a work setting despite his limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).  The Commissioner's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

Phaneuf argues that the ALJ's residual functional capacity assessment is wrong because he has "a per se disabling level of social functioning impairment."  He contends that the vocational

---

[9] Phaneuf does not argue that he satisfied the criteria for Paragraph C.

expert's testimony about the jobs Phaneuf can do, which is based on the residual functional capacity assessment, does not provide substantial evidence to support the ALJ's decision.

As is explained above, the ALJ's finding of marked limitations in maintaining social functioning does not result in a finding that Phaneuf is "per se" disabled. Although Phaneuf argues a different interpretation of his record and a novel application of the criteria for disability, the court must follow the established regulations and standards that govern social security benefits determinations. Because substantial evidence supports the ALJ's residual functional capacity assessment and disability finding, the decision is affirmed.

## Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 15, is granted, and Phaneuf's motion to reverse and remand the decision, document no. 12, is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

June 24, 2014

cc: Daniel McKenna, Esq.
    Karl E. osterhout, Esq.
    Robert J. Rabuck, Esq.